MANHATTAN TAXI SERVICE CORPORATION, Respondent, *v.* CHECKER CAB MANUFACTURING CORPORATION et al., Appellants.

(Argued April 2, 1930; decided May 6, 1930.)

*Samuel H. Kaufman* and *Sylvester Pindyck* for Checker Cab Manufacturing Corporation, appellant. The plaintiff has no cause of action under section 80-e of the Personal Property Law against the defendant Checker Cab Manufacturing Corporation. (*Rapp* v. *Mabbett Motor Car, Inc.*, 201 App. Div. 283; *Lynn Morris Plan* v. *Gordon,*

146 N. E. Rep. 685; *Commercial Credit Co.* v. *Neel,* 107 So. Rep. 639; *Commercial Credit Co.* v. *National Credit Co.,* 255 Pac. Rep. 104; *Commercial Credit Co.* v. *Coover,* 129 Atl. Rep. 187; *Koch* v. *Fox,* 71 App. Div. 288.)

*Emanuel J. Freiberg* and *Henry C. Burnstine* for Hugo Hoffman Credit Corporation, appellant. The sale was a sale at public auction. (*Ackerman* v. *Rubens,* 167 N. Y. 405; *Earle* v. *Gorham Mfg. Co.,* 2 App. Div. 460; *Tinkom* v. *Purdy,* 5 Johns. 345; *National Bank* v. *Sprague,* 20 N. J. Eq. 159; *Stief* v. *Hart,* 1 N. Y. 20; *Shimer* v. *Mosher,* 39 Hun, 153; *Sherman* v. *Slayback,* 58 Hun, 255; *Harrison* v. *Hall,* 239 N. Y. 51; *Barrett Mfg. Co.* v. *Van Ronk,* 229 N. Y. 90; *Coe* v. *Cassidy,* 72 N. Y. 133; *Holliday* v. *McGraw,* 106 Misc. Rep. 661.)

*Nathan Kelmenson* for respondent. The alleged public auction should be declared void as a matter of law on the ground that the property was not within the view of the bidders. (Civ. Prac. Act, § 706; *Stief* v. *Hart,* 1 N. Y. 20; *Strickland* v. *Hare & Chase,* 217 App. Div. 196; *Stonebridge* v. *Perkins,* 141 N. Y. 1; *Welch* v. *Woodruff,* 20 N. Y. St. Repr. 840; *Sherman* v. *Slayback,* 58 Hun, 255; *Warring* v. *Loomis,* 4 Barb. 484; *Sheldon* v. *Soper,* 14 Johns. 352.)

CARDOZO, Ch. J. Plaintiff bought from the defendant the Checker Cab Manufacturing Corporation, fourteen taxicabs under contracts of conditional sale, the price to be paid in monthly installments, secured by promissory notes. These promissory notes the conditional vendor sold to the defendant the Hugo Hoffman Credit Corporation, adding its own indorsement. At the same time it assigned the bills of sale, and guaranteed payment in accordance with the contracts. The plaintiff, the buyer, paid more than fifty per cent of the purchase price of the cabs, and thereafter made default. The Credit Corporation gave notice of this default to the Checker Corpora-

tion, which paid the overdue installments according to its guaranty. Thereupon the Checker Company retook possession of the cabs for the buyer's breach of the condition. The seizure was followed by a resale in the name of the Credit Corporation, the owner of the notes. A notice of such sale, signed by the Credit Corporation, was published in a newspaper, posted at public places, and mailed to the buyer at its last known place of business. The notice was to the effect that the fourteen cabs, with forty-four others, would be sold at public auction at a stated date at room 805, No. 1767 Broadway, in the borough of Manhattan, city of New York, the office of the signer. The sale was held at the appointed time. The cabs were not present, within the view of those attending. They were miles away, at a garage in Long Island City. There was nothing in the public notice whereby expectant bidders were informed of their location or given an opportunity to inspect them. The fifty-eight cars, *i. e.*, the fourteen bought by the plaintiff and forty-four others, were offered in a single lot. No one was present at the sale except an officer of the Credit Corporation, who bid $500 for each cab and bought them at that price. A large deficiency resulted.

Section 79 of the Personal Property Law (Cons. Laws, ch. 41) makes a resale compulsory whenever a conditional seller has retaken possession of his goods, and the buyer at the time of the retaking has paid at least half the purchase price. The sale must be within thirty days and must be one at public auction. Section 80-e provides that in the event of the failure of the seller to resell the goods retaken in compliance with section 79, " the buyer may recover from the seller his actual damages, if any, and in no event less than one fourth of the sum of all payments which have been made under the contract, with interest."

The plaintiff sues under the statute for one-fourth of the payments made pursuant to the contract. At the

trial the defendants had a verdict. The Appellate Division reversed upon the law and granted a new trial, the basis of the reversal being this, that the resale conducted as described was not a sale at public auction within the meaning of the statute.

We think plainly it was not. The general rule is that upon a sale of personal property at public auction, the property must be at hand and within the view of those attending (*Stief* v. *Hart*, 1 N. Y. 20, 25; *Sheldon* v. *Soper*, 14 Johns. 352; *Strickland* v. *Hare & Chase, Inc.*, 217 App. Div. 196; *Shimer* v. *Mosher*, 39 Hun, 153, 155; *Sherman* v. *Slayback*, 58 Hun, 255; *Warring* v. *Loomis*, 4 Barb. 484). The statute makes express direction to that effect when there is a sale upon execution (Civ. Prac. Act, § 706; Code Civ. Proc. § 1428; 2 R. S. [1st ed.] p. 367, § 23; *Stonebridge* v. *Perkins*, 141 N. Y. 1, 5). We do not mean to say that in respect of other sales the requirement of view and presence is so absolute as to admit of no exception. The need for some exceptions and their range must depend upon considerations of policy and fairness that cannot be formulated with precision in advance of the event. At times the thing to be sold may be too bulky to be brought within the view of bidders, as, for example, upon a sale of a ship (*Ackerman* v. *Rubens*, 167 N. Y. 405), or the rolling stock of a railroad. At times inspection may be useless, as upon a sale of bonds or shares of stock. Always, however, the sale must be so made as to be consistent with the fundamental purpose of an offering at public auction. This means that whenever for some special reason the chattel to be sold is not to be present in the auction room and its nature is such that inspection by a bidder can have any possible utility, the notice of sale must state the place where the chattel is located, and give opportunity to view it. Nothing of the kind was done in auctioning these cabs. In the office of a credit corporation, on an upper floor of an office building, fifty-eight vehicles, including the fourteen in controversy, were offered for

sale without statement, either then or in advance, of the make or condition, or the time or place for view. Such a sale is a public auction in name, and in name only. It is of the essence of an auction that there shall be full and free opportunity for competition among bidders. So true is this that any agreement unfairly restrictive of that opportunity is against public policy and void (*Hopkins* v. *Ensign*, 122 N. Y. 144, 150). It is idle to look for bids unless the bidders know what they are buying. The only bidder at this sale, indeed the only person present, was the conditional vendor in whose behalf the sale was made. There would be cause for surprise in view of the form of the notice, if there had been a bid by any one else.

We think the plaintiff was at liberty to ignore a performance so farcical and futile, and recover a quarter of its payments, with interest, as if no sale had been attempted. The judgment is erroneous, however, in imposing liability not only on the Credit Corporation, but on the Checker Company as well. By section 61 of the statute, " ' seller ' means the person who sells or leases the goods covered by the conditional sale, or any legal successor in interest of such person." When the Checker Company sold and assigned to the Credit Corporation the bills of sale and notes, the latter corporation became the " legal successor in interest," and thereafter was the " seller " within the meaning of the statute. On this seller devolved the statutory duty to resell at public auction, and in default of such resale to return the statutory proportion of payments theretofore received. The fact is unimportant that in the retaking of the cabs the Checker Company co-operated with the Credit Corporation, or even acted on its own initiative. No doubt its guaranty of payment supplied it with an interest in regaining the chattels conditionally sold and thus diminishing its loss. The interest did not avail to revest it with its title as conditional vendor, which it had already assigned

to another upon the transfer of the notes (*Rapp* v. *Mabbett Motor Car Co., Inc.*, 201 App. Div. 283; *Lynn Morris Plan Co.* v. *Gordon*, 251 Mass. 323). It was then without greater rights than any " stranger to the transaction " (*Lynn Morris Plan Co.* v. *Gordon, supra*). A different question would be here if the assignment had been found, upon the basis of sufficient evidence, to be a cover or a sham. Of this there was neither proof nor claim. On the contrary, the plaintiff, far from impeaching the assignment, stated it in the complaint, and counts upon it even now as charging the assignee with the duties of an owner. For like reasons we are not concerned with considerations that might be pertinent if the plaintiff were complaining of a tortious interference with ownership or possession. The cause of action is not one for conversion, on the theory of an officious retaking by a seller who has parted with his title. The cause of action assumes the legality of the taking, and charges the omission of a statutory duty in failing to resell thereafter. The liability must be confined to that defendant on whom the duty is imposed.

As to the defendant Hugo Hoffman Credit Corporation, the order of the Appellate Division should be affirmed, and judgment absolute ordered against said appellant upon the stipulation, with costs in all courts.

As to the defendant Checker Cab Manufacturing Corporation, the order of the Appellate Division should be reversed, and the judgment of the Trial Term affirmed, with costs in the Appellate Division and in this court.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Ordered accordingly.