PACIFIC DISCOUNT CO., INC., A NEW JERSEY CORPORA-
TION, PLAINTIFF-APPELLANT, v. HENRY JACKSON
AND AUDREY ROBINSON, DEFENDANTS-RESPOND-
ENTS.

Argued February 6, 1962—Decided April 2, 1962.

*Mr. H. Kermit Green* argued the cause for appellant (*Mr. Milton S. Kramer,* attorney).

*Mr. C. Clyde Ferguson, Jr.,* of the Massachusetts and New York Bars, argued the cause for respondents as *amicus curiae.*

The opinion of the court was delivered by

HANEMAN, J. Defendant Jackson agreed to purchase an automobile from St. George Motors (Motors) upon a conditional sales contract accompanied by a promissory note signed by him and cosigned by defendant Robinson. Plaintiff became the owner of the defendant's note and contract by Motors' endorsement and assignment. After making a number of payments Jackson defaulted. Plaintiff thereupon repossessed the automobile. In the process of foreclosing the conditional sales agreement, plaintiff forwarded to Jackson and Robinson by certified mail notice of the proposed resale of the vehicle. Neither notice, however, was received by defendants although the correctness of the addresses thereon was admitted by Jackson. When returned unopened to plaintiff the Jackson envelope bore the legend, "Addressee unknown at this address" and the Robinson envelope bore the legend "Unclaimed." At the public resale the car brought less than the remaining balance due under the conditional sales contract and note. Plaintiff thereupon filed suit in the Essex County District Court demanding judgment for the deficiency, plus an attorney's collection fee provided for in the contract. Jackson entered a *pro se* appearance.

The trial court held that under *R. S.* 46:32–25 certified mail was an unauthorized medium for the transmittal of notice of resale and that, in any event, actual receipt of the notice by the vendees was an essential requirement of that statute. Accordingly, it entered judgment for defendants. Plaintiff thereupon appealed to the Appellate Division, which, while disapproving of so much

of the trial court's conclusion as made actual receipt of notice a prerequisite of a sale, affirmed the judgment upon the sole ground that certified mailing of notice was an unauthorized method of service. *Pacific Discount Co., Inc. v. Jackson,* 68 *N. J. Super.* 331 (*App. Div.* 1961). This court granted plaintiff's petition for certification, 36 *N. J.* 139 (1961), and, no appearance having been entered for either defendant, appointed Prof. C. Clyde Ferguson, Jr., of Rutgers University Law School, *amicus curiae* to defend the Appellate Division judgment. We agree with the Appellate Division that actual receipt of notice of sale is not a prerequisite to a valid resale and thereby reject this ground for the judgment of the trial court.

█ The sole question for decision, therefore, and the focal point of the Appellate Division opinion, is whether written notice of a proposed sale sent by the repossessing party to the conditional vendee *via* certified mail constitutes sufficient compliance with the statutory requirements.

The section of the Uniform Conditional Sales Act directly involved is *R. S.* 46:32–25 (*L.* 1919, *c.* 210, § 19), which reads in part:

"If the buyer does not redeem the goods within ten days after the seller has retaken possession, and the buyer has paid at least fifty per cent of the purchase price at the time of retaking, the seller shall sell them at public auction in the state where they were at the time of the retaking, such sale to be held not more than thirty days after the retaking. The seller shall give to the buyer not less than ten days' written notice of the sale, either personally or by registered mail, directed to the buyer at his last known place of business or residence. * * *."

At the time of the adoption of the Uniform Conditional Sales Act certified mail was not in existence. The Legislature, in selecting a mailed type notice of resale, had, therefore, only a choice between ordinary or registered mail. It selected the latter. On June 6, 1955 the United States Post Office Department adopted a new type of mail— certified mail—which is in many respects, hereinafter more

particularly delineated, similar to registered mail. Two months later, in August 1955, *Assembly Bill* A.590 was introduced as amendatory of *N. J. S. A.* 1:1–2 and upon passage in the Legislature and signature by the Governor on October 7, 1955 became *L.* 1955, *c.* 226, § 1. Prior to the 1955 amendment *N. J. S. A.* 1:1–2 contained the following opening paragraph:

"Unless it be otherwise expressly provided or there is something in the subject or context repugnant to such construction, the following words and phrases, when used in any statute and in the Revised Statutes, shall have the meaning herein given to them."

There followed interpretative designations for some 35 words and phrases. The 1955 amendatory statute reenacted *N. J. S. A.* 1:1–2 verbatim, including the above introductory paragraph, and added as the sole change thereto a provision specifying the meaning to be attributed to the term "Registered Mail." That portion of the statute so added reads:

"Registered mail. The words 'registered mail' include 'certified mail.' "

It seems clear that, as far as this added portion of the statute is concerned, the Legislature intended to equate certified with registered mail. The crucial question therefore is whether "there is something in the subject or context [of *R. S.* 46:32–25] repugnant to" the use of certified mail as a means of giving written notice of resale to a defaulting conditional sale vendee.

Defendants argue that the context and subject matter of *R. S.* 46:32–25 require the use of notice devices which possess a high probability factor insofar as actual notice to a defaulting buyer of the sale of the collateral is concerned and that registered mail furnishes this factor to a higher degree than does certified mail. Defendants further urge that as *R. S.* 46:32–25 provides a process-type notification, registered mail is the only mail service which is consistent with the purpose of the subject matter require-

ments of the act. They conclude that certified mail for these reasons is repugnant to *R. S.* 46:32–25.

 It should first be noted that the disqualification for repugnancy does not apply to registered or certified mail alone but to the entire glossary of 36 words and phrases listed in the statute. As a result of this observation, it becomes necessary to determine what norm to establish as a test, not only for the particular words here employed but for all the words and phrases included within the statute. In statutory construction, repugnant is perhaps best equated with irreconcilable conflict. *Cf. Ruckman v. Ransom,* 35 *N. J. L.* 565 *(E. & A.* 1871); *Chambers v. Boldt,* 123 *N. J. L.* 111 *(Sup. Ct.* 1939); *Title Guarantee Land Co. v. Paterson,* 76 *N. J. Eq.* 539 *(Ch.* 1909). We conceive that repugnant was used in this sense in the subject statute.

We need only examine some salient characteristics of both types of mail to discover that they exhibit no such irreconcilable conflict.

Security in transit is much greater for registered mail than for certified mail, it has been argued, but basis for this assertion does not stand up well under examination. Registered articles are generally transported between the mailing and distributing post offices in one of two fashions. The first procedure involves the use of rotary-lock pouches, while the other utilizes iron-lock pouches. The essential difference between the two security devices is that any opening of the lock on a rotary-locked pouch can be detected immediately through certain design features incorporated into the lock, while the iron-lock may be opened and locked again without giving an indication of the tampering. Juxtaposed with pertinent postal regulations governing the handling of certified and registered articles this factor is hardly significant to the issue before us.

For example, although registered articles are often packed separately into rotary-lock pouches, these same pouches are then placed for transpostation inside a standard iron-lock pouch carrying ordinary mail. *Postal Manual Part* 361.121.

Since certified mail is shipped as ordinary mail similar perils are thereby faced by both registered and certified mail during transit. Additionally, where use of a rotary-lock pouch is not indicated by reason of the lack of sufficient bulk or quantity of the registered articles to be shipped or when the dispatch is to be made to an office without a rotary-type lock key, the registered mail is placed together with the ordinary mail and certified mail in an iron-lock pouch. *Id.* 361.121, 361.123. No matter what initial disposition of the registered mail is made then, in transit it travels in the same pouch as does ordinary mail and is subject to the same dangers of destruction, loss, etc.

It is not until the pouch containing the registered mail reaches a post office that it is afforded extra "protection." There the registered mail is removed from the pouch, recorded and, if kept in the local station overnight, locked in a safe. *Id.* 361.342, 361.511.

In the delivery procedure, as in transit, the differences in handling are insignificant. Neither type mail requires as incident thereto that the carrier make delivery personally to the addressee. It is only upon payment of an additional fee that such a restriction on delivery can be made by the sender. *Id.* 161.52, 161.97, 168.44. Nor is such handling a requirement of *R. S.* 46:32–25. If the sender does not restrict delivery and the addressee lives in a hotel or apartment house, delivery of a registered or certified letter may even be made to those persons designated by the management of such establishments. *Id.* 154.63.

Assuming that the sender has restricted delivery to the addressee only and that such person is not present to accept delivery or, if delivery is unrestricted, that no one is present at the address to take delivery, then the carrier will leave a notice that the mail can be called for at the post office. *Id.* 161.9, 168.51, 168.52. No attempt at a second delivery is thereafter made with either type mail unless the addressee so requests but in the case of registered articles a second notice is left if the addressee has not

called for his mail within five days of the initial attempt at delivery. *Id.* 161.94, 168.52. Certified mail is held for the addressee for a maximum of fifteen days unless the sender requests a return in a shorter time, while registered articles are returned after ten days unless the sender requests that they be held longer, such time not to exceed sixty days. *Id.* 158.422, 158.421. Viewed in this light it appears that both types of mail have almost equal chance for delivery. Any difference in the relative probability of delivery seems to us inconsequential.

From examination of the postal regulations it is obvious the checking and recording procedures utilized for registered articles at each post office stop exist primarily to establish a method of tracing. Such a system is desirable in the event of loss or destruction where the contents of the registered package have value for, unlike certified mail, registered mail carries with it, upon payment of a fee, insurability. This element holds no significance for us here, however, since a notice of resale is a nonnegotiable instrument which must be declared as having no value for the insurability purposes of registered mail. See *Id.* 161.4.

In summary, we perceive no substantial difference in the handling of registered and certified mail relative to the security in transit or probability of delivery, sufficient to enable us to characterize certified mail as "repugnant" to the subject or context of *R. S.* 46:32–25. We need not discuss the question whether certified mail could be used as process for acquiring jurisdiction since here the notice has no such role.

Reversed and remanded for further proceedings consistent herewith.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.