GAINER BANK, N.A., Plaintiff-Appellee, v. DARLENE JENKINS, Defendant-Appellant.

First District (2nd Division)   Nos. 1—95—4140, 1—95—4197 cons.

Opinion filed October 8, 1996.—Rehearing denied November 7, 1996.

Daniel A. Edelman, Cathleen M. Combs, Tara G. Redmond, J. Eric Vander Arend, and Michelle Weinberg, all of Edelman & Combs, and Steven Morton, both of Chicago, for appellant.

Stanley J. Adelman, John E. Mitchell, and Suzanne Robinson, all of Rudnick & Wolfe, of Chicago, for appellee.

JUSTICE DiVITO delivered the opinion of the court:

In this interlocutory appeal we are asked to determine whether, under the circumstances present here, an Indiana holder of a retail installment sales contract was required to comply with the Illinois Motor Vehicle Retail Installment Sales Act (Ill. Rev. Stat. 1991, ch.

121¹/₂, par. 561 *et seq.* (now 815 ILCS 375/1 *et seq.* (West 1994))) (the Act) before repossessing a car in Illinois. For the reasons that follow, we conclude that the provisions of the Act do not apply in this case.

In July 1987, defendant Darlene Jenkins entered into a retail installment sales contract for the purchase of a used 1984 Buick with Schepel Buick, Inc., an automobile dealer in Merrillville, Indiana. The cost of the Buick was $8,500, plus 14.90% annual interest, to be paid in 48 payments. Schepel Buick immediately assigned the contract to plaintiff Gainer Bank, N.A., an Indiana bank.

In November 1987, plaintiff purchased "force placed" insurance for the Buick, believing that defendant failed to furnish an insurance policy as required by the contract. By April 1991, the premiums for the insurance, which were added to defendant's loan balance, totalled almost $4,200. In January 1991, when defendant failed to make payments,[1] plaintiff obtained a default judgment for the Buick's possession in Indiana and had it repossessed in Illinois and sold at a public auction.

In June 1991, plaintiff filed the instant action seeking payment of the deficiency balance of the contract, including the amount of the insurance. Later, after receiving proof that defendant was insured during the time she had possession of the Buick, plaintiff amended its complaint to credit her for the costs of the insurance.

In May 1993, defendant filed an answer and affirmative defenses and counterclaimed, individually and on behalf of a class of persons allegedly injured by plaintiff. In count V of her counterclaim, she contended that plaintiff's repossession and sale of the Buick violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ICLS 505/1 *et seq.* (West 1994)) by failing to comply with the Act. Count VI, in which defendant alleged conversion, was based in part on purported violations of the Act. Her fifth, part of her sixth, and her eighth affirmative defenses also raised the Act as a bar to plaintiff's collection of a deficiency judgment.

In August 1993, plaintiff moved to dismiss counts I through V of defendant's counterclaim and to strike her first through fifth, part of her sixth, and her eighth and ninth affirmative defenses. Finding that the Act was inapplicable to the instant case, the circuit court dismissed and struck those portions of defendant's filings that were predicated upon it: count V and part of count VI of the counterclaim and the fifth, part of the sixth, and the eighth affirmative defenses.

---

[1] We note that although defendant contends that the Buick was repossessed due to her failure to make payments on the insurance premiums, plaintiff maintains that it repossessed the Buick only after defendant failed to make several payments on the car itself.

Pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308), the circuit court certified for appeal the question of whether section 20 of the Act applies to this case. We granted defendant's motion for leave to appeal and this interlocutory appeal followed.

The sole question presented in this appeal is whether section 20 of the Act applies to a motor vehicle retail installment sales contract where the contract was entered into and payments were made in Indiana, but the vehicle at issue was titled, insured, kept, and repossessed in Illinois.

■ The Act was enacted to protect the unsophisticated motor vehicle consumer from the oppressive and unscrupulous practices of the installment seller. *Chrysler Credit Corp. v. Ross*, 28 Ill. App. 3d 165, 168-71, 328 N.E.2d 65 (1975).

Section 20 of the Act provides that a holder of a motor vehicle retail installment sales contract must comply with certain requirements before repossessing a car or selling it. Ill. Rev. Stat. 1991, ch. 121$^1$/$_2$, par. 580 (now 815 ILCS 375/20 (West 1994)). Where the holder fails to comply with the requirements of section 20, the buyer of the car is not liable for any finance, delinquency, collection, or refinancing charges connected with the contract. Ill. Rev. Stat. 1991, ch. 121$^1$/$_2$, par. 584 (now 815 ILCS 375/24 (West 1994)). Here, defendant contends that because plaintiff failed to comply with section 20, it may not collect a deficiency judgment.

■ Plaintiff first contends that the Act is inapplicable because it does not create a private right of action. *Arca v. Colonial Bank & Trust Co.*, 265 Ill. App. 3d 498, 502, 637 N.E.2 687 (1994). Because defendant is not suing under the Act, but invokes it merely to prove violations of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1994)) and to bar plaintiff from collecting a deficiency judgment, plaintiff's argument fails.

■ Both parties agree that in order for the Act to apply, the instant contract must fall within the ambit of section 2.5. That section provides that a retail installment contract "means an instrument or instruments prescribing the terms of a retail installment transaction and entered into or *to be performed in this State.*" (Emphasis added.) Ill. Rev. Stat. 1991, ch. 121$^1$/$_2$, par. 562.5 (now 815 ILCS 375/2.5 (West 1994)). Here, the installment contract for the sale of the Buick (the contract) was not entered into in Illinois. Thus, the Act applies only if the contract was "to be performed" in Illinois.

The contract, which is a boilerplate contract of adhesion, provided that payments were to be made to plaintiff in Indiana. Under a section entitled "Additional Terms and Conditions," the contract further provided that the buyer agreed to a number of conditions, includ-

ing not selling the car until liabilities were paid in full, not granting a lien on it, paying all necessary taxes, keeping it fully insured, keeping it at the address provided, notifying plaintiff of any change in address, and not removing it without the written consent of plaintiff. In this case, each of these obligations was performed in Illinois.

We note, however, that although the buyer was required to comply with the conditions of the contract, there was no requirement that she do so in Illinois. Defendant could have taken the Buick to any state, provided that she complied with the provisions requiring her to register, title, and insure it and keep it at the address she provided. Because portions of the instant contract were performed in Illinois, however, we turn to the question of whether performance of some contractual provisions in Illinois is sufficient to bring a transaction within the Act's purview.

In a contract for the repayment of money lent, "[r]epayment is the ultimate aim and objective of the contract." Restatement (Second) of Conflict of Laws § 195, Comment *b*, at 620-21 (1971). Where the ultimate object of a contract is the payment of money, the contract is to be performed where payment is made. *Reighley v. Continental Illinois National Bank & Trust Co.*, 390 Ill. 242, 250, 61 N.E.2d 29 (1945); *George v. Haas*, 311 Ill. 382, 386, 143 N.E. 54 (1924). Here, the chief purpose of the contract was repayment of the loan to purchase the Buick. Because the additional conditions were intended to protect plaintiff's interest in the car, we conclude that those conditions, which were incidentally performed in Illinois, were not an integral part of the contract. That those ancillary conditions were to be performed in Illinois is insufficient to bring the contract within the purview of the Act. Accordingly, because payments in this case were made in Indiana and the contract was to be performed in Indiana, the Act does not apply.

The cases cited by defendant wherein courts held that the law of the state of repossession governs the issues of the legality of the repossession and the sale of the vehicle, even where the vehicle was purchased in another state, are not helpful. *Dunn v. Security Pacific Housing Service*, No. 94C—05—113 (Del. Super. Ct. September 27, 1995); *General Motors Acceptance Corp. v. Robinson*, 263 A.2d 302 (Del. Super. Ct. 1970); *United Securities Corp. v. Tomlin*, 57 Del. 219, 198 A.2d 179 (Del. Super. Ct. 1964). In each of the cited cases, the courts applied choice of law principles in reaching their determination.

Here, in contrast, we interpret a specific statutory provision which, in stating that it applies only to contracts entered into or to be performed in Illinois, circumscribes its own geographic applicabil-

ity. That limitation must be given the range of application intended by the legislature. Restatement (Second) of Conflict of Laws § 6, Comment *b*, at 11 (1971). Had the legislature intended the Act to have a broader reach, it could have so provided. See, *e.g.*, 815 ILCS 710/3 (West 1994) (providing that the Motor Vehicle Franchise Act applies to "[a]ny person who engages directly or indirectly in purposeful contacts within this State").

Finally, although defendant urges us to invoke the Act because of public policy concerns, the Act's primary purpose is to regulate the content of motor vehicle retail installment contracts; the buyer's rights upon default are but one section of it. *Cf.* Ill. Rev. Stat. 1991, ch. 121$^1$/$_2$, par. 563 (now 815 ILCS 375/3 (West 1994)) (general requirements of contract); Ill. Rev. Stat. 1991, ch. 121$^1$/$_2$, par. 564 (now 815 ILCS 375/4 (West 1994)) (identification of parties and subject matter of contract); Ill. Rev. Stat. 1991, ch. 121$^1$/$_2$, par. 565 (now 815 ILCS 375/5 (West 1994)) (terms and conditions of contract); Ill. Rev. Stat. 1991, ch. 121$^1$/$_2$, par. 580 (now 815 ILCS 375/20 (West 1994)) (buyer's remedies upon default). It would be improper for Illinois courts, in invoking the Act, to regulate the minutia of contracts entered into and performed in Indiana, simply because a consumer takes the purchased property to Illinois, then breaches her obligation to make payments. Thus, in the absence of specific authorizing legislation, we decline to provide a breaching party the power to control the law applicable to a contract by moving the purchased property to a state other than the one in which the contract was made, thereby forcing a creditor to repossess in the state where the property is kept.

Accordingly, we answer the certified question in the negative: the Act does not apply to the repossession of a car in Illinois where the motor vehicle retail installment sales contract was entered into and payments were made in Indiana, even though conditions peripheral to the contract were fulfilled and the repossession occurred in Illinois. The judgment of the circuit court is affirmed.

Affirmed.

HARTMAN, P.J., and BURKE, J., concur.